

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-14-00156-CV

IN THE INTEREST OF J.F., M.F.,
AND J.F., CHILDREN

----------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NUMBER: 323-91486J-09

----------

## MEMORANDUM OPINION[1]

----------

Appellant B.F. (Mother) appeals the trial court's order terminating her parental rights to three of her children, Ja.F., M.F., and Jo.F. (collectively, the children).[2] Because the evidence was sufficient to show that termination of Mother's parental rights was in the children's best interest, we affirm the trial court's judgment.

---

[1]See Tex. R. App. P. 47.4.

[2]We use aliases for the children and their relatives throughout this opinion. See Tex. R. App. P. 9.8(b)(2).

## I. BACKGROUND FACTS

Between 1995 and 2014, Mother gave birth to nine children: J.B., P.B., R.F., W.O.,[3] Ja.F.,[4] M.F.,[5] Jo.F., an unnamed child,[6] and L.M. J.B. and P.B. were removed from Mother's care by Oklahoma Child Protective Services and were eventually adopted by foster parents. Oklahoma Child Protective Services also removed R.F. from Mother when R.F. was four months' old, but Mother did not know "the end result of it" and had not seen R.F. since the removal. During this time, Mother had an "extensive substance abuse history" and had been arrested for aggravated robbery in 2002, prostitution in 2008, and possession of a controlled substance in 2013. Based on concerns about Mother's drug use and neglect of the children, the Texas Department of Family and Protective Services (DFPS) initiated four investigations in 2009. These investigations resulted in the removal of the children, but the children were eventually returned to Mother in late 2010 after Mother substantially complied with DFPS's service plans.

On June 17, 2013, DFPS received another referral regarding Mother's neglectful supervision of the children. The referrals noted that J.B., P.B., and R.F. had been removed from her care in Oklahoma, that W.O. and another child

---

[3]W.O. was born prematurely and died shortly after birth.

[4]Ja.F. tested positive for cocaine at birth.

[5]M.F. tested positive for cocaine at birth.

[6]This child also was born prematurely at nineteen weeks and did not survive the birth. Mother described it as "more of a miscarriage."

2

had been born prematurely and died, and that Ja.F. and M.F. had tested positive for cocaine at birth.[7] Nikki Ferrell, an investigative supervisor with DFPS, determined that Mother had been placed on bond due her arrest for possession of a controlled substance but that her bond had been revoked because she had tested positive for methamphetamine. Ferrell called Mother "about the investigation," but Mother "was very hostile" and uncooperative. Mother was arrested shortly thereafter based on the revocation of her bond. Because DFPS believed Mother's brother would take the children back to Oklahoma, DFPS filed a suit affecting the parent-child relationship (the SAPCR), requesting permission to take possession of the children and termination of Mother's parental rights. See Tex. Fam. Code Ann. § 262.101 (West 2014). The trial court entered an emergency order for the children to be removed immediately from Mother's care. See id. § 262.102 (West 2014).

A full adversary hearing was held on June 28, 2013, but Mother did not appear because she had not been served with the SAPCR. After the hearing, the trial court entered the following findings:

> (1) there was a danger to the physical health or safety of the children which was caused by an act or failure to act of the person entitled to possession and for the children to remain in the home is contrary to the welfare of the children; (2) the urgent need for protection required the immediate removal of the children and makes efforts to eliminate or prevent the children's removal impossible or unreasonable; and (3) notwithstanding reasonable efforts to eliminate the need for the children's removal and enable the children

---

[7]Mother admitted to using cocaine "within a couple of days" of Ja.F.'s birth.

3

to return home, there is a substantial risk of a continuing danger if the children are returned home.

*See* Tex. Fam. Code Ann. § 262.201(b) (West 2014). The trial court also entered temporary orders that appointed DFPS as temporary managing conservator of the children, limited Mother's access to the children, and required Mother to cooperate with DFPS. *See id.* § 105.001 (West 2014).

Under DFPS's subsequent service plan, Mother was required to "actively participate in therapy," stay drug free, not participate in criminal activities, attend all scheduled visitations with the children, develop a relapse-prevention plan, attend Narcotics Anonymous at least three times a week, "engage" in a drug-education group, maintain stable housing, participate in a parenting group, maintain a source of income, complete a parenting class, submit to a drug assessment, and "comply with all requests for random drug testing as requested by [DFPS]." Chelvalier Levels, a DFPS conservatorship worker, reviewed the service plan with Mother while she was incarcerated such that Mother understood what was required.

Mother was released from jail in October 2013. After her release, she visited the children three times between November 5, 2013, and March 20, 2014. Mother averred that she never missed an appointment to see the children. Mother gave birth to L.M. on February 18, 2014. Shortly after L.M. was born, DFPS requested Mother to submit to a hair-strand test to determine if Mother had been using drugs. Mother refused to take the test and refused all subsequent

4

requests for various reasons. DFPS removed L.M. from Mother in March 2014, and L.M. tested positive for cocaine.[8] Mother had no explanation for why L.M. tested positive shortly after his birth and did not believe that L.M. actually tested positive. Indeed, Mother told Ferrell that DFPS "was harassing her."

On March 21, 2014, DFPS—at the request of the children's therapists and guardian ad litem—filed a motion to modify the temporary orders to suspend all visits between Mother and the children. DFPS gave several reasons for the requested change:

> [Mother] has an alternate lifestyle and a long and violent criminal history with convictions for prostitution and continuous drug abuse. This lifestyle has contributed to the recent and rapid deterioration of the children's psychological health, and two of the children, [M.F.] and [Ja.F.], have required psychiatric inpatient treatment. . . . [M.F.] is currently in outpatient treatment . . . with severe emotional disturbances.
>
> The children's therapists have concluded that further visits with their mother are deleterious to their psychological health. Each visit or discussion of a visit has triggered behaviors that are extremely destructive. The foster parents have reported sexual acting out, insomnia, rage, uncontrolled crying, and behavior swings before and after visits by the mother.

These concerns arose after M.F. told her therapist that she had been sexually abused multiple times while in Mother's care. There was some indication that this was the result of mother selling M.F. for sex in exchange for drugs. The trial

---

[8]Levels stated that DFPS would have removed L.M. from Mother at birth based on Mother's "extensive drug use and history with [DFPS]" but did not do so because Mother was evasive and "hid" from DFPS after L.M. was born. When L.M. was born, Mother was bound by the service plan, which required Mother to remain in contact with Levels.

court immediately entered a temporary restraining order prohibiting Mother from contacting the children in any way.

At trial, Mother vehemently denied the sexual-abuse allegations and suggested that the children had been coached to make those accusations. Mother also stated that she had not used drugs since December 2010. Levels testified that adoption of the children by the children's foster parents would be in the children's best interest. Levels also detailed that Mother had failed to attend parenting classes and Narcotics Anonymous meetings. Mother also failed to complete a substance abuse relapse plan and had not notified DFPS that she was employed. Levels further testified, however, that Mother attended individual counseling and drug-education counseling. Levels expressed concern that Mother intended to continue living with a man who had a violent and extensive criminal history, had a history of substance abuse, and had recently tested positive for cocaine. The children's guardian ad litem also stated that Mother's parental rights should be terminated.

The trial court granted DFPS's petition and terminated Mother's parental rights. The trial court found by clear and convincing evidence that Mother "knowingly placed or allowed the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the children" and that she "engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical or emotional well-being of the children." The trial court further found by clear and convincing evidence that termination of

6

Mother's parental rights was in the children's best interest.  *See* Tex. Fam. Code Ann. § 161.206 (West 2014); *see also id.* § 161.001(1)(D)–(E), (2) (West 2014). The trial court appointed DFPS as the children's managing conservator.  *See id.* § 161.207 (West 2014).  Mother filed an accelerated appeal.  *See* Tex. R. App. P. 28.4(a)(1).

## II. LEGAL CONSIDERATIONS IN PARENTAL-TERMINATION CASES

"When the State seeks to sever permanently the relationship between a parent and a child, it must first observe fundamentally fair procedures."  *In re E.R.*, 385 S.W.3d 552, 554 (Tex. 2012) (citing *Santosky v. Kramer*, 455 U.S. 745, 747–48, 102 S. Ct. 1388, 1391–92 (1982)).  We strictly scrutinize termination proceedings and strictly construe involuntary termination statutes in favor of the parent.  *In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012); *E.R.*, 385 S.W.3d at 554–55; *Holick v. Smith*, 685 S.W.2d 18, 20–21 (Tex. 1985).

Termination decisions must be supported by clear and convincing evidence.  Tex. Fam. Code Ann. §§ 161.001, 161.206(a); *E.N.C.*, 384 S.W.3d at 802.  Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."  Tex. Fam. Code Ann. § 101.007 (West 2014); *E.N.C.*, 384 S.W.3d at 802.

## III. DISCUSSION

### A. SUFFICIENCY OF THE EVIDENCE

In evaluating the evidence for legal sufficiency in parental termination cases, we determine whether the evidence is such that a fact-finder could reasonably form a firm belief or conviction that the challenged ground for termination was proven. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). We review all the evidence in the light most favorable to the finding and judgment. *Id.* We consider evidence favorable to termination if a reasonable fact-finder could, and we disregard contrary evidence unless a reasonable fact-finder could not. *See id.* We cannot weigh witness credibility issues that depend on the appearance and demeanor of the witnesses because that is the fact-finder's province. *Id.* at 573–74. And even when credibility issues appear in the appellate record, we defer to the fact-finder's determinations as long as they are not unreasonable. *Id.* at 573.

In reviewing the evidence for factual sufficiency, we give due deference to the fact-finder's findings and do not supplant the verdict with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We determine whether, on the entire record, a fact-finder could reasonably form a firm conviction or belief that the parent committed one of the acts or omissions listed in section 161.001(1) and that the termination of the parent-child relationship would be in the best interest of the children. Tex. Fam. Code Ann. § 161.001; *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). If, in light of the entire record, the disputed evidence that a

8

reasonable fact-finder could not have credited in favor of the finding is so significant that a fact-finder could not reasonably have formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient. *H.R.M.*, 209 S.W.3d at 108.

## B. SECTION 161.001(2): BEST INTEREST

Mother argues in two issues that the evidence was legally and factually insufficient to support the trial court's finding that termination of her parental rights was in the best interest of the children. There is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. Tex. Fam. Code Ann. § 263.307(a) (West 2014).

We review the entire record to determine the child's best interest. *In re E.C.R.*, 402 S.W.3d 239, 250 (Tex. 2013). The same evidence may be probative of both the subsection-(1) ground and the best-interest determination. *C.H.*, 89 S.W.3d at 28; *see E.C.R.*, 402 S.W.3d at 249. Nonexclusive factors that the trier of fact in a termination case may also use in determining the best interest of the child include:

(A)   the desires of the child;

(B)   the emotional and physical needs of the child now and in the future;

(C)   the emotional and physical danger to the child now and in the future;

9

(D)     the parental abilities of the individuals seeking custody;

(E)     the programs available to assist these individuals to promote the best interest of the child;

(F)     the plans for the child by these individuals or by the agency seeking custody;

(G)     the stability of the home or proposed placement;

(H)     the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

(I)     any excuse for the acts or omissions of the parent.

*E.N.C.*, 384 S.W.3d at 807.  Undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the best interest of the child.  *C.H.*, 89 S.W.3d at 27.  On the other hand, the presence of scant evidence relevant to each factor will not support such a finding.  *Id.*

As Mother points out, the evidence showed that she had completed or was attempting to complete many of the services required in DFPS's service plan and that the charge for possession of a controlled substance, which had led to her incarceration in 2013, was eventually dismissed because "there was no evidence in the laboratory room."  She argues that this evidence precludes a reasonable fact-finder from concluding that termination was in the children's best interest.  However, the trial court also heard evidence of Mother's criminal and substance-abuse history, which appeared to be continuing.  There was also evidence that Mother had prostituted M.F. to fund her drug habit.  Mother continued to live with her boyfriend who also had a criminal and substance-abuse history and who had recently tested positive for cocaine.  Mother believed it was acceptable to

10

continue to associate with him because "everybody make mistakes." Mother continually refused to submit to required drug testing. The children had been removed from Mother previously and returned to her, only to be placed in the same dangerous environment. The children had severe emotional problems that required extensive therapy and hospitalization. M.F. was hospitalized after she threatened to do herself and others harm. Ja.F. also was briefly hospitalized because he threated harm to himself and others. Indeed, the children's therapists and guardian ad litem believed visits with Mother were too harmful to the children. The children's foster parents were able to provide them with a stable environment and hoped to adopt the children. They also were diligently providing the children with the therapies and structure that they needed. The children told Levels that they loved their foster parents and wanted that placement to be "their forever home."

This evidence was probative of each nonexclusive factor and buttressed the trial court's conclusion regarding termination.[9] We conclude that this evidence was legally and factually sufficient to allow a fact-finder to reasonably

---

[9]Of course, we do not recite each and every fact supporting the trial court's judgment. Although the evidence we recite is legally and factually sufficient to uphold the trial court's best-interest determination, the record is rife with additional supporting evidence. Because we are affirming the trial court's judgment, however, we are not bound to include an exhaustive and meticulous recitation. *See In re A.B.*, 57 Tex. Sup. Ct. J. 595, 2014 WL 1998440, at *3–4, *6–7 (May 16, 2014).

form a firm belief or conviction that termination of Mother's parental rights was in the children's best interest.  Accordingly, we overrule issues one and two.

## IV.  CONCLUSION

Having overruled Mother's issues, we affirm the trial court's judgment.  *See* Tex. R. App. P. 43.2(a).


/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL:  DAUPHINOT, GARDNER, and GABRIEL, JJ.

DELIVERED:  October 2, 2014.